**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| HOORAY LLC | : | |
| | : | Civil Action No.: 3:25-cv-00466-AWT |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KEVLYN CREATIVE, LLC and KEVLYN | : | |
| K. ZIERK | : | |
| | : | |
| Defendants. | : | May 28, 2025 |

<u>**MEMORANDUM OF LAW IN SUPPORT**</u>
<u>**OF DEFENDANTS' MOTION TO DISMISS**</u>

{N6070867}

## <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND ................................................................................2

III.  LEGAL STANDARD.............................................................................................4

    A.  Motion to Dismiss Under Rule 12(b)(2) .......................................................4

    B.  Motion to Dismiss Under Rule 12(b)(3) .......................................................4

    C.  Motion to Dismiss Under Rule 12(b)(6) .......................................................5

IV.  ARGUMENT .........................................................................................................5

    A.  This Court Does Not Have Personal Jurisdiction Over Either Defendant....................5

        1.  The Connecticut Long-Arm Statute Does Not Confer Personal Jurisdiction Over Defendants ............................................................................6

        2.  Exercising Personal Jurisdiction Over Defendants Would Violate Due Process ....7

    B.  Plaintiff Has Not Plausibly Pleaded An Alter Ego Theory Sufficient to Justify Exercising Personal Jurisdiction Over Zierk ..............................................11

    C.  This Court Is Not the Proper Venue for The Action..................................13

    D.  Plaintiff Has Not Plausibly Pleaded a Claim for False Designation of Origin............14

    E.  Plaintiff Has Not Plausibly Pleaded a Claim for Cyberpiracy...................15

    F.  Plaintiff Has Not Plausibly Pleaded a Claim for Violation of CUTPA......................16

V.  CONCLUSION.....................................................................................................17

## TABLE OF AUTHORITIES

### Cases

*Alfred Dunhill Ltd. v. Interstate Cigar Co.*,
499 F.2d 232 (2d Cir. 1974) ................................................................................ 14

*Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*,
122 F.3d 130 (2d. Cir. 1997) ............................................................................... 13

*Amplify Car Wash Advisors LLC v. Car Wash Advisory LLC*,
2025 WL 764373 (S.D.N.Y. Mar. 10, 2025) ...................................................... 16

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*,
480 U.S. 102 (1987) ............................................................................................ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................... 5, 12

*Austen v. Catterton Partners V, LP*,
729 F. Supp. 2d 548 (D. Conn. 2010) ................................................................... 6

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
902 F.2d 194 (2d Cir. 1990) .................................................................................. 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................. 5

*Best Van Lines, Inc. v. Walker*,
490 F.3d 239 (2d Cir. 2007) ................................................................................ 11

*Broad. Mktg. Int'l, Ltd. v. Prosource Sales & Mktg., Inc.*,
345 F. Supp. 2d 1053 (D. Conn. 2004) .................................................................. 6

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016) .............................................................................. 8, 9

*Calder v. Jones*,
465 U.S. 783 (1984) ............................................................................................ 12

*Carney v. Horion Invs. Ltd.*,
107 F. Supp. 3d 216 (D. Conn. 2015) ............................................................... 4, 5

*Curtis v. Citibank, N.A.*,
226 F.3d 133 (2d Cir. 2000) ................................................................................ 15

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .............................................................................................. 8

*Di Masi v. G.M.A.C. Mortg. Co.*,
2019 WL 6726396 (D. Conn. Dec. 11, 2019)...................................................................16

*Gen. Elec. Co. v. City of Bridgeport*,
1993 WL 540934 (Conn. Super. Ct. Dec. 16, 1993) .......................................................15

*Genometrica Rsch. Inc. v. Gorbovitski*,
2013 WL 394892 (E.D.N.Y. Jan. 31, 2013) ...................................................................15

*Hardy v. Ford Motor Car*,
20 F. Supp.2d 339 (D. Conn. 1998)...................................................................................4

*Jansson v. Stamford Health, Inc.*,
2017 WL 1289824 (D. Conn. Apr. 5, 2017)....................................................................17

*Jazini v. Nissan Motor Co., Ltd.*,
148 F.3d 181 (2d Cir. 1998)............................................................................................11

*Kaplan, Inc. v. Yun*,
16 F. Supp. 3d 341 (S.D.N.Y. 2014)...............................................................................16

*Lewittes v. Cohen*,
2004 WL 1171261 (S.D.N.Y. May 26, 2004) ................................................................16

*Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC*,
632 F. Supp. 3d 562 (S.D.N.Y. 2022).............................................................................13

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996)........................................................................................4, 11

*Milne v. Catuogno Ct. Reporting Servs., Inc.*,
239 F. Supp. 2d 195 (D. Conn. 2002)..........................................................................7, 8

*Pablo Star, Ltd. v. Welsh Gov't*,
170 F. Supp. 3d 597 (S.D.N.Y. 2016)...............................................................................4

*Pulse Creations, Inc. v. Vesture Grp., Inc.*,
154 F. Supp. 3d 48 (S.D.N.Y. 2015)...............................................................................14

*Ryan v. Cerullo*,
282 Conn. 109 (2007) .......................................................................................................7

*Savage v. Scripto-Tokai Corp.*,
147 F. Supp. 2d 86 (D. Conn. 2001)...............................................................................10

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir. 2014)..............................................................................................9

*Thomas Indus., Inc. v. City of Bristol*,
336 F. Supp. 3d 28 (D. Conn. 2018) ........................................................... 12

*Van Praagh v. Gratton*,
993 F. Supp. 2d 293 (E.D.N.Y. 2014) ................................................... 14, 15

*Walden v. Fiore*,
571 U.S. 277 (2014) ......................................................................................... 8

*Whitaker v. Am. Telecasting, Inc.*,
261 F.3d 196 (2d Cir. 2001) ........................................................................... 4

*William Wrigley Jr. Co. v. Waters*,
890 F.2d 594 (2d Cir. 1989) ......................................................................... 12

## **Statutes**

15 U.S.C. § 1125 ........................................................................................5, 14

28 U.S.C. § 1331 ...............................................................................................5

28 U.S.C. §§ 1391 .....................................................................................13, 14

28 U.S.C. § 1406(a) ...........................................................................................5

Conn. Gen. Stat. § 52-59b(a) ....................................................................5, 6, 8

## **Rules**

Fed. R. Civ. P. 12(b)(2) ..............................................................................1, 4, 11

Fed. R. Civ. P. 12(b)(3) ...........................................................................1, 4, 5, 14

Fed. R. Civ. P. 12(b)(6) .................................................................................1, 5

I.    **INTRODUCTION**

Pursuant to Rules 12(b)(2), (3), and (6) of the Federal Rules of Civil Procedure,

Defendants Kevlyn Creative, LLC ("Kevlyn") and Kevlyn K. Zierk ("Zierk") hereby submit this

Memorandum of Law in support of their Motion to Dismiss. This is an action for trademark

infringement, cyberpiracy and deceptive trade practices in which Plaintiff seeks to prevent

Defendants from selling cookie cutters under the trademark BAKE BAKE HOORAY, in

addition to damages relating thereto. As will be demonstrated below, Plaintiff's effort suffers

from fatal defects in jurisdiction, venue and pleading.

The Court lacks personal jurisdiction over Defendants, who are both Colorado residents

with no meaningful contacts to Connecticut. As an initial matter, Plaintiff cannot fulfill its

burden to present specific facts that (i) either Defendant is amenable to long-arm jurisdiction,

and (ii) this Court's exercise of personal jurisdiction over either Defendant would not violate due

process. Moreover, as it concerns Zierk individually, Plaintiff fails to plausibly allege that she is

an alter ego of Kevlyn, and therefore exercising personal jurisdiction over Zierk under that

theory cannot stand. Similar to the lack of personal jurisdiction, this suit also suffers from the

defect that this Court is the improper venue for the action. Should the Court advance beyond

those deficiencies, each of the four counts of the Complaint fail to state a proper claim for relief.

Each count offers little more than a recitation of their elements without offering any

explanation—much less a plausible one—of how Defendants allegedly violated those claims. On

their own right, such conclusory and deficient causes of action do not satisfy federal pleading

requirements.

For these reasons, alone and in combination, the Court should grant Defendants' Motion

to Dismiss the Complaint.

II.    **FACTUAL BACKGROUND**

Plaintiff commenced this action by filing the Complaint on March 21, 2025 against Zierk

individually and Kevlyn. (ECF No. 1.) Plaintiff's Complaint pleads four related counts stemming

from Defendants alleged trademark infringement through the sale of cookie cutters under the

trademark BAKE BAKE HOORAY: (1) False Designation of Origin (Count I); (2) False

Designation of Origin (Count II); (3) Cyberpiracy (Count III); and (4) violation of CUTPA

(Count IV).

Zierk has lived in Colorado since 2011. (Declaration of Kevlyn Zierk, at ¶ 5, attached as

Exhibit 1 ("Zierk Dec.")) She maintains a Colorado driver's license, is registered to vote in

Colorado, maintains bank accounts in Colorado, files income tax returns in Colorado, registers

her vehicles in Colorado, maintains health insurance in Colorado, owns real property in

Colorado, and is a member of a church in Colorado. (*Id.* at ¶¶ 6-13.) Zierk has never resided in

Connecticut, does not maintain a Connecticut driver's license, is not registered to vote in

Connecticut, does not file income tax returns in Connecticut, has never been employed in

Connecticut, does not own or possess any real property in Connecticut, and does not regularly

conduct business in Connecticut. (*Id.* at ¶¶ 32-38.)

Zierk founded Kevlyn on January 26, 2018 as a privately-held, Colorado limited liability

company. (*Id.* at ¶¶ 14-15.) Kevlyn operates as the umbrella organization for two brands—

Festive Gal and Bake Bake Hooray. Both brands operate as d/b/a (doing business as) entities

under Kevlyn Creative LLC. (*Id.* at ¶ 19.) Zierk founded Kevlyn for the purpose of selling

headbands on Etsy under the brand Festive Gal. (*Id.* at ¶ 20.) In 2021, Kevlyn's operations

moved to a warehouse located at 6665 South Kenton Street, Suite 201, Englewood, Colorado

80111. (*Id.* at ¶ 21.) At that time, Kevlyn expanded the platforms on which it sold its headbands

from Etsy to also Faire and directly on the Festive Gal-branded website, www.festivegal.com. (*Id.* at ¶ 22.) Kevlyn started selling cookie stamps under the brand Festive Gal in November 2023. That venture was so successful that Kevlyn established a new brand, Bake Bake Hooray, to sell cookie stamps. (*Id.* at ¶ 25.)

Kevlyn bought the URL—https://bakebakehooray.com—in July 2024. (*Id.* at ¶ 26.) Kevlyn launched the aforementioned website in November 2024 to sell cookie stamps, cake toppers, and baking accessories. (*Id.* at ¶ 27). Kevlyn did not begin selling cookie stamps, cake toppers, and baking accessories through the brand Bake Bake Hooray until November 8, 2024. (*Id.* at ¶ 28). Since November 8, 2024, Kevlyn Creative LLC has sold 2,836 orders of cookie stamps, cake toppers, and other baking accessories under the brand Bake Bake Hooray. (*Id.* at ¶ 29). Kevlyn Creative LLC's total Connecticut sales under the brand Bake Bake Hooray are just 37 orders, totaling $1,451.40, which is about 1% of Kevlyn Creative LLC's total orders. (*Id.* at ¶ 30).

Kevlyn is based in Colorado and all of its products, goods and merchandise are located in Colorado. (*Id.* at ¶ 23). Its employees all reside in Colorado. (*Id.* at ¶ 24). Its bank account is also in Colorado. (*Id.* at ¶ 17). Although Zierk is owner and Registered Agent of Kevlyn, she has never used Kevlyn's funds for personal matters. (*Id.* at ¶¶ 16, 31). Kevlyn does not regularly solicit business in Connecticut, and it does not derive substantial revenue from business endeavors in Connecticut. (*Id.* at ¶¶ 52-53). Kevlyn does not directly advertise its business endeavors in Connecticut media outlets. (*Id.* at ¶ 54). Kevlyn does not rent or maintain office space in Connecticut. (*Id.* at ¶ 55). Kevlyn does not maintain a local telephone or mailing address in Connecticut. (*Id.* at ¶¶ 56-57). Kevlyn does not maintain an ownership interest in any bank or investment account located exclusively in Connecticut. (*Id.* at ¶ 58).

Despite Defendants' lack of connection to Connecticut, Plaintiff has improperly attempted to hale Defendants into this Court. For this reason, and/or the fatal pleading defects in the Complaint, the Court should dismiss this action.

## III.    LEGAL STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(2)

A motion to dismiss is the proper means by which to assert that a court lacks personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2). In this regard, a plaintiff has the ultimate burden of proving that a court has personal jurisdiction over a defendant. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). To overcome a motion to dismiss, a plaintiff must demonstrate facts to make out a prima facie case of personal jurisdiction over a defendant; that is, a plaintiff must show, through competent evidence, that a defendant's conduct allows the court to exercise personal jurisdiction over it. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196–97 (2d Cir. 1990); *Hardy v. Ford Motor Car*, 20 F. Supp.2d 339, 341 (D. Conn. 1998). To make this prima facie showing, a plaintiff must prove three elements: "(1) proper service of process upon the defendant; (2) a statutory basis for personal jurisdiction; and (3) accordance with constitutional due process principles." *Pablo Star, Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 605 (S.D.N.Y. 2016) (internal quotations and citations omitted).

### B.  Motion to Dismiss Under Rule 12(b)(3)

"The same standard of review is applied to a motion to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3) as is applied to dismissals for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2)." *Carney v. Horion Invs. Ltd.*, 107 F. Supp. 3d 216, 222 (D. Conn. 2015) (internal quotations and citations omitted). In defending against a motion to dismiss for improper

venue, plaintiff bear the burden of proving that venue is proper. *Id.* "Pursuant to 28 U.S.C. § 1406(a), the court may transfer or dismiss the case if venue is not proper." *Id.*

### C. Motion to Dismiss Under Rule 12(b)(6)

The Federal Rules of Civil Procedure allow a party to move to dismiss a case for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The relevant inquiry is whether the factual allegations in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. *Id.*

Whether based on personal jurisdiction, venue or pleading, Plaintiff has not and cannot fulfill its burden of proof, and the Court should therefore dismiss the Complaint.

## IV.   <u>ARGUMENT</u>

### A. This Court Does Not Have Personal Jurisdiction Over Either Defendant

The Complaint fails to plausibly allege that Zierk and Kevlyn are subject to personal jurisdiction in Connecticut. Plaintiff alleges that this Court "has Federal question jurisdiction under 28 U.S.C. § 1331 and the Lanham Act, 15 U.S.C. § 1125." (ECF No. 1, ¶ 4.) Plaintiff also alleges that this Court has personal jurisdiction over Defendants under Connecticut's long arm statute—Conn. Gen. Stat. § 52-59b(a)(3)(B). Section 52-59b(a)(3)(B) provides that

> (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association . . . who in person or through an agent: (3) commits a tortious act outside the state causing injury to person or property within the state . . . if such person or agent B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

"In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules." *Broad. Mktg. Int'l, Ltd. v. Prosource Sales & Mktg., Inc.*, 345 F. Supp. 2d 1053, 1057 (D. Conn. 2004) (internal quotations and citations omitted). Connecticut engages in a two-step inquiry as to whether personal jurisdiction is appropriate. *Id.* First, the Court determines whether the exercise of jurisdiction is proper pursuant to Connecticut's long-arm statute. *Id.* Second, if jurisdiction is permissible under the long-arm statute, then the Court must determine whether the exercise of jurisdiction comports with the Due Process Clause. *Id.*

## 1. The Connecticut Long-Arm Statute Does Not Confer Personal Jurisdiction Over Defendants.

Connecticut General Statutes § 52-59b(a) sets forth the conditions for long-arm jurisdiction over nonresident individuals and foreign limited liability company. *See, e.g.*, *Austen v. Catterton Partners V, LP*, 729 F. Supp. 2d 548, 559 (D. Conn. 2010). The sole condition chosen by Plaintiff for personal jurisdiction of the nonresident individual and foreign limited liability company here is Section 52-59b(a)(3)(B). That section properly extends to a defendant that "commits a tortious act outside the state causing injury to a person or property within the state ... if such person or agent ... expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Conn. Gen. Stat. § 52-59b(a)(3)(B). This requires allegations sufficient to establish that each Defendant expected or reasonably should have expected that the conduct at issue would

have consequences in Connecticut **and** that each Defendant derives substantial revenue from interstate commerce. *Ryan v. Cerullo*, 282 Conn. 109, 123 (2007). "Because of the indefinite nature of the 'substantial revenue' requirement, the determination of whether that jurisdictional threshold has been met in any particular case necessarily will require a careful review of the relevant facts and frequently will entail an evaluation of both the total amount of revenue involved and the percentage of annual income that that revenue represents." *Id.* at 125.

Plaintiff clearly failed to meet the last statutory element in that section, namely, that each Defendant derives substantial revenue from interstate commerce. Although Plaintiff includes the conclusory allegation in its Complaint that "Defendants derive substantial revenue from interstate commerce," Plaintiff fails to set forth any support for that allegation. As seen from the declaration submitted herewith, the reality is that Kevlyn's total Connecticut sales equal just 37 orders, totaling $1,451.40 out of over 2,836 total orders. (Zierk Dec., at ¶¶ 29-30.) Only 1% of overall national sales occur in Connecticut. (*Id.*) As for Zierk, she, individually, does not derive **any** revenue from interstate commerce, let alone substantial revenue. Simply based on these facts, this Court cannot conclude that Kevlyn or Zierk derive substantial revenue from interstate commerce, and thus personal jurisdiction as proffered by Plaintiff cannot stand against Defendants.

## 2. Exercising Jurisdiction Over Defendants Would Violate Due Process

As an initial matter, the Court need not address whether exercising jurisdiction over a defendant is constitutionally permissible when the Connecticut long-arm statute's requirements are not met. *See Milne v. Catuogno Ct. Reporting Servs., Inc.*, 239 F. Supp. 2d 195, 203 (D. Conn. 2002) (where plaintiff failed to show that long-arm statute reached defendants, jurisdictional inquiry ends). Thus, the Court need not address whether exercising jurisdiction

over Defendants would be appropriate under constitutional due process principles, given the fact that Plaintiff cannot fulfill its burden to show the requirements of § 52-59b are met as to either Zierk or Kevlyn.

Even assuming, *arguendo*, that Plaintiff could fulfil that burden, the Complaint still must be dismissed for lack of personal jurisdiction because exercising it over both Defendants would violate the Due Process Clause. The Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts . . . [T]he nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal quotations omitted). There are two types of personal jurisdiction—general jurisdiction and specific jurisdiction—that satisfy the constitutional requirement of sufficient minimum contacts between the defendant and the forum state. *Milne*, 239 F. Supp. 2d at 203. Here, the Court lacks both.

As the United States Supreme Court recognized in *Daimler*, only a limited set of circumstances will render a non-resident defendant corporation amenable to general jurisdiction in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). A court may exercise general jurisdiction over a non-resident defendant corporation where the court finds that the corporate defendant's affiliations with the forum state are "so continuous and systematic as to render it essentially at home in the forum. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (adopting *Daimler*). Kevlyn's contacts with Connecticut are not "so continuous and systematic as to render it essentially at home" in Connecticut. *See id.*

As described above, Kevlyn is a Colorado limited liability company with its principal place of business in Colorado. (Zierk Dec., at ¶¶ 15, 18.) Kevlyn does not maintain an office,

own any real property, or have any employees in Connecticut. (*Id.* at ¶¶ 49, 50, 55.) To the extent Kevlyn engages in any business in Connecticut through sales of products into Connecticut generally, about 1% of product sales are in Connecticut. (*Id.* at ¶¶ 29-30.) Consequently, this Court lacks general jurisdiction over Kevlyn.

Additionally, this Court lacks general jurisdiction over Zierk. "The paradigm forum for general jurisdiction over an individual is the individual's domicile, his home." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). Zierk is a Colorado resident. (Zierk Dec., at ¶ 5.) She maintains a Colorado driver's license, is registered to vote in Colorado, maintains bank accounts in Colorado, files income tax returns in Colorado, registers her vehicles in Colorado, maintains health insurance in Colorado, owns real property in Colorado, and is a member of a church in Colorado. (*Id.* at ¶¶ 6-13.) Zierk has never resided in Connecticut, does not maintain a Connecticut driver's license, is not registered to vote in Connecticut, does not file income tax returns in Connecticut, has never been employed in Connecticut, does not own or possess any real property in Connecticut, and does not regularly conduct business in Connecticut. (*Id.* at ¶¶ 32-38.)

Moreover, the Court does not have specific personal jurisdiction over Kevlyn because it does not have minimum contacts with Connecticut. "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state." *Brown*, 814 F. 3d at 624–25 (stating that specific jurisdiction only exists where plaintiff's injuries arise out of defendant's activities in Connecticut). For a court to exercise personal jurisdiction over a defendant, it must first determine whether that defendant has "minimum contacts" with a forum state. To demonstrate "minimum contacts," a plaintiff must demonstrate that its claims arose out of or related to a defendants' conduct in Connecticut, and that the defendant has "purposefully

availed" itself to personal jurisdiction in Connecticut. *Savage v. Scripto-Tokai Corp.*, 147 F. Supp. 2d 86, 91 (D. Conn. 2001). The level of sales of a seller of products or services into a given jurisdiction are determinative as to whether it has minimum contacts with that jurisdiction. *See, e.g.*, *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*, 480 U.S. 102 (1987).

While customers do have the ability to purchase products from Kevlyn's website, the sales of its products are insignificant in Connecticut and include about 1% of overall national sales. Kevlyn does not derive substantial revenue from Connecticut. (Zierk Dec., at ¶ 53). Kevlyn does not directly advertise in Connecticut media outlets. (*Id.* at ¶ 54). Kevlyn does not rent or maintain office space in Connecticut. (*Id.* at ¶ 55). Kevlyn does not maintain a local telephone or mailing address in Connecticut. (*Id.* at ¶¶ 56-57). Kevlyn does not maintain an ownership interest in any bank or investment account located exclusively in Connecticut. (*Id.* at ¶ 58). Given the lack of "minimal contacts" with Connecticut, personal jurisdiction over the Kevlyn would also run afoul of "traditional notions of fair play and substantial justice" and would not be reasonable under the circumstances of this particular case.

Further, the Court does not have specific personal jurisdiction over Zierk because she does not have minimum contacts with Connecticut. As described above, with no individual connections to Connecticut, Zierk clearly has not "purposefully availed" herself to personal jurisdiction in Connecticut.

\* \* \* \* \* \*

Based on the foregoing, the long arm statute provision chosen by Plaintiff cannot be found to apply to either Defendant. Even if it did apply, Defendants' virtually nonexistent connections to Connecticut do not rise to the level of sufficient minimum contacts to fulfill constitutional principles of due process, and the exercise of jurisdiction over them would be

unreasonable and offend traditional notions of fair play and substantial justice. Accordingly, the Court lacks personal jurisdiction over Defendants and should grant the Motion and dismiss the Complaint.

**B.  Plaintiff Has Not Plausibly Pleaded an Alter Ego Theory Sufficient to Justify Exercising Personal Jurisdiction over Zierk**

Hooray's Complaint fails to plausibly allege that Zierk is an alter ego of Kevlyn, therefore, exercising personal jurisdiction over Zierk, a Colorado resident, under the alter ego theory cannot stand. Plaintiff's assertion of personal jurisdiction over Zierk rests on the premise that Zierk is an alter ego of Kevlyn. Plaintiff does not otherwise allege in its Complaint that the Court may directly exercise jurisdiction over Zierk under a theory of general or specific personal jurisdiction. Plaintiff merely asserts that "Zierk is the principal member of Kevlyn and is responsible for all of Kevlyn's business activities. Kevlyn is a mere instrumentality for the transaction of Zierk's business affairs, and there is such unity of interest that Kevlyn has no separate personality from Zierk. Kevlyn and Zierk are alter egos." (ECF No. 1, ¶ 11.) This conclusory statement, without supporting facts, is not sufficient to establish that Zierk is an alter ego of Kevlyn, therefore justifying exercise of personal jurisdiction.

On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of showing that the court has personal jurisdiction over each defendant. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."). However, the court is not bound by conclusory statements, without supporting facts. *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998). "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere

conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984).

In considering whether an individual and a corporate entity are alter egos of one another, "[i]t is well settled that ... courts are reluctant to disregard the corporate entity." *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989) (collecting cases). "[T]he corporate veil will be pierced only when it can be demonstrated that the '[corporate] form has been used to achieve fraud, or when the corporation has been so dominated by an individual ... and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.'" *Id.* (internal citations omitted). The Court may consider several factors when making this determination:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of business discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms-length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity, and (10) intermingling of property between the entities.

*Thomas Indus., Inc. v. City of Bristol*, 336 F. Supp. 3d 28, 34 (D. Conn. 2018). The Court must keep in mind that, "[i]n each case" in which reviewing courts have disregarded the corporate form, "the evidence demonstrated an abuse of that form either through on-going fraudulent activities of a principal, or a pronounced and intimate commingling of identities of the corporation and its principal." *Williams Wrigley Jr. Co.*, 890 F.2d at 600.

The Complaint makes no such specific allegations with respect to Zierk here. Nowhere does the Complaint allege that Zierk disregarded corporate formalities, inadequately capitalized Kevlyn, or had common business space. Nor did Plaintiff set forth allegations supporting financial commingling, which is considered particularly important in determining whether an

individual is an alter ego of a corporation. *See Liberty Highrise Pvt. Ltd. v. Praxis Energy Agents DMCC*, 632 F. Supp. 3d 562, 571 (S.D.N.Y. 2022). Indeed, the Second Circuit has found clear error where district courts have held an individual principal to be an alter ego absent such evidence of financial comingling. *See, e.g.*, *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 132 (2d. Cir. 1997) (finding there was "no evidence that [the individual] used [the corporation's] funds for personal matters or intermingled corporate funds with his own."). In fact, the evidence is quite the opposite here, as Zierk has represented that she has "never used Kevlyn Creative LLC's funds for personal matters." (Zierk Dec., at ¶ 31.)

Plaintiff's threadbare recitals of the legal standard for piercing the corporate veil is insufficient to warrant piercing the corporate veil. For these reasons, the Court should dismiss the Complaint against Zierk for lack of personal jurisdiction.

## C.  This Court is not the Proper Venue for the Action

Venue is improper because the requirements of the federal venue statute, 28 U.S.C. § 1391, are not met. Plaintiff alleges that this Court "is a proper venue for Defendants to answer this action, pursuant to 28 U.S.C. §§ 1391(b)(1) and (c)(2)." (ECF No. 1, ¶ 6.) The venue statute, 28 U.S.C. § 1391(b), states as follows: "[b] A civil action may be brought in (1) a judicial district *where any defendant resides*, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1) (emphasis added). Section 1391(c) states that "[c] For all venue purposes . . . (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." As set forth above, Defendants are residents of Colorado. Moreover, Defendants are not subject to this Court's personal jurisdiction. Neither subsection

(b)(1) nor (c)(2) apply here and dismissal of the Complaint is also warranted against Kevlyn and

Zierk pursuant to Fed. R. Civ. P. 12(b)(3).

### D.  Plaintiff Has Not Plausibly Pleaded a Claim for False Designation of Origin

Plaintiff has failed to plausibly allege a claim for false designation of origin under 15

U.S.C. § 1125(a)(1)(A). Section 1125(a)(1)(A) provides that:

> Any person who . . . uses in commerce any word, term, name . . . , or any false
> designation of origin. . . [which] is likely to cause confusion . . . as to the origin,
> sponsorship, or approval of his or her goods, services, or commercial activities by
> another person. . . shall be liable in a civil action by any person who believes that
> he or she is or is likely to be damaged by such act.

 "To state a claim under this section of the Lanham Act, plaintiff must allege that [i] goods or

services are involved, [ii] interstate commerce is affected, and [iii] there is a false designation of

origin or a false description or representation with respect to those goods or services in

commerce." *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 56 (S.D.N.Y. 2015).

The Second Circuit has observed that a claim for false designation of origin under 15 U.S.C.

§ 1125(a)(1)(A) "does not have boundless application as a remedy for unfair trade practices."

*Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974).

Thus, "a plaintiff must prove, first, that the mark is entitled to protection, and second, that

defendant's use of the mark is likely to cause consumers confusion as to the origin or

sponsorship of defendant's goods." *Pulse Creations, Inc.*, 154 F. Supp. 3d at 56 (internal

quotations and citations omitted). An unregistered mark can be protected under the Lanham Act

if it would qualify for registration as a trademark. *Van Praagh v. Gratton*, 993 F. Supp. 2d 293,

301 (E.D.N.Y. 2014) (internal citations omitted). "To qualify for trademark registration, a mark

must be either (1) inherently distinctive, where its intrinsic nature serves to identify its particular

source; or (2) distinctive by virtue of having acquired a secondary meaning in the minds of consumers." *Id.* at 302 (internal quotations and citations omitted).

Preliminarily, Plaintiff has not alleged in the Complaint that it has a protectable mark for the designation "Bake Bake Hooray." Plaintiff has also not alleged that its mark is inherently distinctive or that it is distinctive by virtue of having acquired secondary meaning. *See id.* Accordingly, the Complaint is insufficient to state a claim for false designation of origin. *Genometrica Rsch. Inc. v. Gorbovitski*, No. 11-CV-05802 ADS AKT, 2013 WL 394892, at *14 (E.D.N.Y. Jan. 31, 2013) (granting motion to dismiss claims for false designation of origin).

Moreover, Plaintiff has essentially alleged the same cause of action twice, necessitating dismissal of the second count for false designation of origin. A motion to dismiss can be granted when counts in a complaint are duplicative because a district court has the discretion to dismiss a duplicative suit. Specifically, plaintiffs do not have the right to maintain two actions on the same subject in the same court against the same defendant at the same time. *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). Although a plaintiff is permitted to plead alternative theories of liability, a plaintiff cannot recover twice for the same wrong. *Gen. Elec. Co. v. City of Bridgeport*, No. CV93 30 45 71 S, 1993 WL 540934, at *3 (Conn. Super. Ct. Dec. 16, 1993) ("A party cannot state the same cause of action twice against the same defendants in the same complaint because there can only be one recovery.").[1]

As such, the Court must dismiss Plaintiff's claims for false designation of origin.

## E. Plaintiff Has Not Plausibly Pleaded a Claim for Cyberpiracy

Plaintiff has failed to plausibly allege a claim for cybersquatting under the Anticybersquatting Consumer Protection Act ("ACPA"). "To allege a cybersquatting claim, a

---

[1] To the extent the Court takes a liberal view of the pleadings, the Second Count for false designation of origin must be dismissed pursuant to Fed. R. Civ. P. 12(f) as "redundant."

plaintiff must show (1) that the infringed-on mark is 'distinctive or famous'; (2) that the domain name is 'identical or confusingly similar to' the mark; and (3) that the alleged cybersquatter acted with a 'bad faith intent to profit.'" *Amplify Car Wash Advisors LLC v. Car Wash Advisory LLC*, No. 22-CV-5612 (JGK), 2025 WL 764373, at *7 (S.D.N.Y. Mar. 10, 2025).

"On a motion to dismiss, the Court should discount any conclusory allegations." *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 350 (S.D.N.Y. 2014). Here, Plaintiff has only offered conclusory allegations in support of the ACPA claim. (ECF No. 1, ¶¶ 34–43.) Plaintiff alleges that Defendants registered an identical or confusingly similar domain name, and that Plaintiff had a bad faith intent to profit. These allegations are "insufficient to establish the "bad faith intent to profit" under the ACPA." *Id.* at 351. The allegations do not suggest that Defendants "perpetrated the core activities that threaten to result in the paradigmatic harm that the ACPA was enacted to eradicate." *Lewittes v. Cohen*, No. 03 CIV. 189(CSH), 2004 WL 1171261, at *8 (S.D.N.Y. May 26, 2004) (internal citations and quotations omitted).

Accordingly, the Court must dismiss Plaintiff's Cybersquatting claim.

**F.      Plaintiff Has Not Plausibly Pleaded a Claim for Violation of CUPTA**

Like the other causes of action in the Complaint, Plaintiff's CUTPA count offers little more than a recitation of the elements of the claim without offering any explanation—much less a plausible one—of how Defendants allegedly violated CUTPA. For example, the claim simply asserts that "Defendants' use of BAKE BAKE HOORAY to sell custom cookie cutters, in Connecticut and throughout the United States, is an unfair trade practice under [CUTPA.]" (ECF No. 1, ¶ 47.) That is a legal conclusion with no factual predicate and cannot meet the federal pleading standard, particularly where the cause of action relies entirely on the unspecified incorporation of the entire pleading. *See Di Masi v. G.M.A.C. Mortg. Co.*, No. 3:18-CV-01130 (KAD), 2019 WL 6726396, at *3 (D. Conn. Dec. 11, 2019) ("Rule 8 requires the plaintiff to

disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." (internal quotations and citations omitted)); *see also Jansson v. Stamford Health, Inc.*, No. 3:16-CV-260 (CSH), 2017 WL 1289824, at *17 (D. Conn. Apr. 5, 2017) ("As courts of this Circuit have repeatedly held, general allegations, without supporting facts other than a clause incorporating an entire complaint by reference, are insufficient to withstand even a motion to dismiss because they do not give fair notice of what the claim is and the grounds upon which its rests."). To the extent this claim is intended to be a catch-all theory of liability, it depends wholly on the viability of Plaintiff's preceding Counts.

Therefore, the Court must dismiss Plaintiff's CUTPA count.

## V.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion and dismiss the Complaint.


Dated: May 28, 2025                     Respectfully submitted,

                                        DEFENDANTS
                                        KEVLYN CREATIVE, LLC and
                                        KEVLYN K. ZIERK

                                        /s/ *Gerard N. Saggese III*
                                        Gerard N. Saggese III
                                        Federal Bar No. ct26430
                                        Meghan F. Buckley
                                        Federal Bar No. ct31490
                                        Carmody Torrance Sandak & Hennessey LLP
                                        1055 Washington Blvd.
                                        4th Floor
                                        Stamford, CT 09601-2218
                                        Tel.: (203) 425-4200
                                        Fax: (203) 325-8608
                                        gsaggese@carmodylaw.com
                                        mbuckley@carmodylaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 28, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ <i>Gerard N. Saggese III</i>
Gerard N. Saggese III
