**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| HOORAY Limited Liability Company, | : | 3:25-cv-466-AWT |
| Plaintiff | : | |
| | : | Hon. Alvin W. Thompson |
| v. | : | |
| | : | Memorandum in Opposition to Kevlyn's |
| Kevlyn Creative, LLC and | : | Motion to Dismiss |
| Kevlyn K. Zierk, | : | |
| Defendants. | : | DRAFT |

At Doc. 32, Kevlyn moves to dismiss Hooray's Complaint. Hooray respectfully opposes that motion for the following reasons.

**1.** Personal jurisdiction is proper over Kevlyn Creative under Connecticut's long-arm statute and Federal due process; to the extent this is disputed, jurisdictional discovery would be proper.

**2.** Personal jurisdiction is proper over Kevlyn K. Zierk as an alter ego; to the extent this is disputed, jurisdictional discovery would be proper.

**3.** Given that personal jurisdiction is proper, then venue also is proper in the District of Connecticut.

**4.** The Complaint adequately pleads plausible claims for false designation of origin, cyberpiracy, and unfair competition. Each of these claims implicates questions that this Court should not decide without reference to a developed record.

# Table of Contents

Legal Standards.................................................................................................................3

  Personal jurisdiction........................................................................................................3

  Alter ego.........................................................................................................................4

  Venue.............................................................................................................................5

  Federal standard of plausible pleading...........................................................................6

  False designation of origin.............................................................................................7

  Cyberpiracy...................................................................................................................8

  Connecticut Unfair Trade Practices Act.........................................................................8

Argument.......................................................................................................................10

  Personal jurisdiction is proper over Defendant Kevlyn Creative...............................10

  Jurisdictional discovery is proper regarding whether Defendant Zierk is an alter ego of Kevlyn Creative.......................................................................................................13

  Venue is proper as to both Defendants; alternatively, jurisdictional discovery can help to resolve the question of venue...................................................................................14

  Defendants concede that they falsely designated the origin of their custom cookie stamps, and merely argue against themselves that a mark they tried to register is not protectable...................................................................................................................14

  Defendants committed cyberpiracy.............................................................................15

  Defendants competed unfairly.....................................................................................16

Conclusion....................................................................................................................17

Alan Harrison – SANDOLLAR Law – Milford, CT

## Table of Authorities

Cases.......................................................................................................................

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L.Ed2d 868, 556 U.S. 662, 77 USLW 4387 (2009).................................................................................................................. 10

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)...........6

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 550 U.S. 544 (2007).9

*Bensch v. Estate of Umar*, 2 F.4th 70 (2nd Cir. 2021)...............................................10

*Carney v. Beracha*, 996 F. Supp. 2d 56, 60-61 (D.Conn. 2014)................................16

*Cenatiempo v. Bank of America, N.A.*, 333 Conn. 769, 788, 219 A.3d 767 (2019)....12

*Cleer LLC v. Stranger*, 3:24-cv-01496-MPS (D.Conn. December 20, 2024)..............16

*Connecticut Community Bank, Natl Assn v. Bank Of Greenwich*, 3:06-cv-01293 (D.Conn. May 3, 2007)................................................................................................11

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir.2006).............................9

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013)...........7

*Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137 (2nd Cir. 1997)......10

*Great Neck Plaza, L.P. v. Le Peep Rest., L.L.C.*, 37 P.3d 485, 490 (Colo. App.2001) 7

*Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886, 889 (S.D.N.Y.1974)...............................................................................................................9

*In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir. 2003)..........6

*In Re Phillips*, 139 P.3d 639 (Colo. 2006)....................................................................7

*Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010)..............19

*Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 350 (S.D.N.Y. 2014)...................................18

*Kun Shan Ge Rui Te Tool Co. Ltd. v. Mayhew Steel Prods., Inc.*, 821 F. Supp. 2d 498, 503 (D. Conn. 2010)...........................................................................................16

*MacCallum v. New York Yankees P'ship*, 392 F. Supp. 2d 259, 266 (D. Conn. 2005) ...................................................................................................................................15

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)..........6

*Omega S.A. v. Omega Engineering, Inc.*, 396 F. Supp. 2d 166, 186-87 (D.Conn. 2005)................................................................................................................ 11

*On-Line Techs. v. Perkin Elmer Corp.*, 141 F. Supp. 2d 246, 265 (D. Conn. 2001)...16

*Paul Lis et al. v. Paul Delvecchio, Jr. et al.*, 3:11-cv-01057-AWT (D.Conn. August 13, 2012)................................................................................................................ 15

*Phillips v. Audio Active Ltd. et al.*, 494 F.3d 378, 384 (2d Cir. 2007)..........................9

*Renovation Realty, Inc. v. Esplanade*, 13-CV-396 (S.D. Cal. May 9, 2013)...............11

*Ryan v. Cerullo*, 918 A.2d 867, 282 Conn. 109 (2007)................................................14

*Seetransport Wiking Trader Schiffahrtsegesellschaft MBH & Co., Kommandit-gesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993).............6

*Subaru Distrib. Corp. v. Subaru of America, Inc.*, 425 F.3d 119, 112 (2d Cir. 2005)…7

*The Cousteau Soc., Inc. v. Cousteau*, 498 F. Supp. 3d 287, 303–04, 306 (D.Conn. 2020)................................................................................................................ 15

*Timex Corp. v. Stoller*, 961 F.Supp. 374, 381 (D. Conn. 1997)...................................12

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615, 23 USPQ2d 1081 (1992)................................................................................. 10

*Webadviso v. Bank of Am. Corp.*, 448 F.App'x 95, 97 (2d Cir. 2011).........................11

*Whelen Engineering Co. v. Tomar Electronics, Inc.*, 672 F. Supp. 659, 666 (D.Conn. 1987)................................................................................................................ 8

*Worldcare Limited Corp. v. World Insurance Co.*, 767 F.Supp.2d 341, 347 (D.Conn. 2011)................................................................................................................ 8

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).............15

Statutes........................................................................................................................

15 U.S.C. § 1052............................................................................................... 10

15 U.S.C. § 1125(a)........................................................................................... 10

15 U.S.C. §1051(b)(3)(D)................................................................................... 18

Rules.............................................................................................................................

Conn.Civ.J.Instrn. 5.2-3..................................................................................... 13

Alan Harrison – SANDOLLAR Law – Milford, CT

Fed.R.Civ.P. 4(k)(1)(A).................................................................................................6

Alan Harrison – SANDOLLAR Law – Milford, CT

**Legal Standards**

**Personal jurisdiction**

Serving a summons establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. Fed.R.Civ.P. 4(k)(1)(A).

On a Rule (12)(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996), *cert. denied*, 519 U.S. 1006 (1997); *In re Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir. 2003). But where a defendant challenges "only the sufficiency of the plaintiff's factual allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990).

"[W]hen a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, . . . [t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Seetransport Wiking Trader Schiffarhtsegesellschaft MBH & Co., Kommandit-gesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam), *cert. denied*, 498 U.S. 1068 (1991)). On a motion to dismiss, "the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by

reference, as well as any documents upon which the complaint relies and which are integral to the complaint." *Subaru Distrib. Corp. v. Subaru of America, Inc.*, 425 F.3d 119, 112 (2d Cir. 2005). All allegations "are to be construed in the light most favorable to the plaintiff." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (internal quotation marks omitted).

**Alter ego**

Defendants both are Colorado residents, so Colorado law is appropriate to determine whether Defendant Zierk should be lumped in with Defendant Kevlyn Creative. Under Colorado law, individual liability is appropriate when the corporation is merely the alter ego of the shareholder, *Great Neck Plaza, L.P. v. Le Peep Rest., L.L.C.,* 37 P.3d 485, 490 (Colo. App.2001), and the corporate structure is used to perpetrate a wrong. *In Re Phillips*, 139 P.3d 639 (Colo. 2006).

In establishing whether such unity of interest exists as to disregard the corporate fiction and treat the corporation and shareholder as alter egos, Colorado courts consider factors including whether (1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a "mere shell," (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes. *Id*, at 644. These factors reflect the underlying principle that the court should only pierce when the corporate form has been abused.

The court's second inquiry is whether justice requires recognizing the substance of the relationship between the shareholder and corporation over the form because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim." Only when the corporate form was used to shield a dominant shareholder's improprieties may the veil be pierced. *Ibid*.

Third, the court must evaluate whether an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the business entity. Achieving an equitable result is the paramount goal of traditional piercing of the corporate veil. A claimant seeking to pierce the corporate veil must make a clear and convincing showing that each consideration has been met. *Ibid*.

**Venue**

Under 28 U.S.C. § 1391, venue in a Federal question case is appropriate in any judicial district in which *any* defendant may be found; and a defendant that is a legal entity shall be deemed to reside in any judicial district in which it is *subject to personal jurisdiction* at the time the action is commenced. *See Worldcare Limited Corp. v. World Insurance Co.*, 767 F.Supp.2d 341, 347 (D.Conn. 2011). Further, where a case specifically implicates Connecticut law, dismissal or transfer of the case out of Connecticut for venue reasons would be improper because it would "deprive the plaintiff of substantive rights". *Whelen Engineering Co. v. Tomar Electronics, Inc.*, 672 F. Supp. 659, 666 (D.Conn. 1987); *cf. Honda Associates, Inc. v. Nozawa Trading, Inc.,* 374

F.Supp. 886, 889 (S.D.N.Y.1974) (transfer for improper venue approved where it would **not** deprive plaintiff of substantive rights).

"[T]he venue statute does not require the district court to determine the *best* venue, only a *suitable* one[.]" *D.H. Blair & Co., Inc. et al. v. Gottdiener et al.*, (emphasis original) 462 F.3d 95, 106 (2d Cir. 2006). In analyzing whether the plaintiff has made the requisite prima facie showing that venue is proper, the Second Circuit views all the facts in a light most favorable to plaintiff. *See Phillips v. Audio Active Ltd. et al.*, 494 F.3d 378, 384 (2d Cir. 2007), citing *New Moon Shipping Co. v. MAN B &W Diesel AG,* 121 F.3d 24, 29 (2d Cir.1997).

In assessing whether a transfer is appropriate, courts have considered, *inter alia:* 1) the plaintiff's choice of forum; 2) the locus of the operative facts; 3) the convenience and relative means of the parties; 4) the convenience of witnesses; 5) the availability of process to compel the attendance of witnesses; 6) the location of physical evidence; 7) the relative familiarity of the court with the applicable law; and 8) the interests of justice, including the interests of trial efficiency. *See, e.g., D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106-07 (2d Cir.2006) (listing factors).

**Federal standard of plausible pleading**

In *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 550 U.S. 544 (2007), the Supreme Court established a "plausibility" standard that requires civil complaints to plead not merely legal conclusions but sufficient "factual content that allows the court to draw the reasonable inference" that the plaintiff is entitled to prevail

on his claim. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L.Ed2d 868, 556 U.S. 662, 77 USLW 4387 (2009). But at the pleading stage, no obligation exists to prove anything, only to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, at 569. Thus, the plausibility standard does not require that a plaintiff plead every factual detail relevant to liability, or allege facts that, if proved to the factfinder's satisfaction, would rule out every possible defense to his claim. It is sufficient for the pleading to contain sufficient factual allegations to nudge the petitioner's claims across the line from conceivable to plausible. *Bensch v. Estate of Umar*, 2 F.4th 70 (2nd Cir. 2021). This is akin to the "probable cause" standard for granting a prejudgment remedy under Connecticut law.

**False designation of origin**

Lanham Act § 43(a) (15 U.S.C. § 1125(a)) protects qualifying unregistered trademarks by prohibiting their imitation to falsely designate the origin of goods or services; the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a). *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615, 23 USPQ2d 1081 (1992). A mark qualifies for registration if it is one "by which the goods of the applicant may be distinguished from the goods of others". 15 U.S.C. § 1052. Distinctiveness of an alleged mark is generally ranked on a scale from not-distinctive to most-distinctive as follows: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; (5) fanciful. *See Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137 (2nd Cir. 1997). Marks that are arbitrary,

fanciful, or suggestive are considered "inherently distinctive," and are automatically entitled to protection under the Lanham Act. *Id*. Whether likelihood of confusion exists is a question of law, and to answer that question the Court will need "[a] record to sift through to assess the *Polaroid* factors." *Connecticut Community Bank, Natl Assn v. Bank Of Greenwich*, 3:06-cv-01293 (D.Conn. May 3, 2007) Doc. 36 at 9.

**Cyberpiracy**

To successfully assert a claim under the ACPA, a plaintiff must demonstrate that (1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain names complained of are identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark. *Webadviso v. Bank of Am. Corp.*, 448 F.App'x 95, 97 (2d Cir. 2011). While distinctiveness and similarity are questions of law, intent is a question of fact. *See, e.g., Renovation Realty, Inc. v. Esplanade*, 13-CV-396 (S.D. Cal. May 9, 2013) ECF No. at ("Whether Defendant actually had 'bad faith intent'–as defined in section 1125(d)(1)(B)– is a factual matter not properly before the court [on a motion to dismiss]."); *concur*, *Omega S.A. v. Omega Engineering, Inc.*, 396 F. Supp. 2d 166, 186-87 (D.Conn. 2005) (bad-faith intent under ACPA requires finding of fact).

**Connecticut Unfair Trade Practices Act**

''CUTPA is, on its face, a remedial statute that broadly prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce… . To give effect to its provisions, [General Statutes] § 42-110g (a)42 of [CUTPA] establishes a private cause of action, available to [a]ny person who suffers

any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by [General Statutes §] 42-110b . . . ." (Footnote added; internal quotation marks omitted.) *Cenatiempo v. Bank of America, N.A.*, 333 Conn. 769, 788, 219 A.3d 767 (2019). Because CUTPA is a self-avowed remedial measure, it is construed liberally in an effort to effectuate its public policy goals; there is no unfair method of competition, or unfair or deceptive act or practice that cannot be reached under CUTPA. *Id*, at 791.

Violation of the Lanham Act establishes per se liability under CUTPA. *Timex Corp. v. Stoller*, 961 F.Supp. 374, 381 (D. Conn. 1997). But even if there is not a Lanham Act violation, Connecticut uses the "cigarette rule" of the Federal Trade Commission for determining when a practice is unfair:

(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness;

(2) whether it is immoral, unethical, oppressive, or unscrupulous;

(3) whether it causes substantial injury to consumers competitors or other businesspersons.

All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Thus a violation of CUTPA may be established by

showing either an actual deceptive practice or a practice amounting to a violation of public policy. *Cenatiempo*, at 790.

If there is not a per se violation, then the question whether a practice is deceptive or unfair under CUTPA is a question of fact. *Id* at 802; *see, also,* Conn.Civ.J.Instrn. 5.2-3 (CUTPA - Unfair Trade Practice - "Cigarette Rule").

## Argument

Defendants ask this Court to dismiss a complaint that plausibly pleads multiple causes of action and establishes standing, jurisdiction, and venue as to each defendant. Their motion fails to carry the burden of persuasion; at key points, their motion fails even to cite apposite law, whether from this Court or from Colorado.

### Personal jurisdiction is proper over Defendant Kevlyn Creative

Defendants argue, as their first basis for challenging personal jurisdiction over Defendant Kevlyn Creative, that Plaintiff has not shown that they derive "substantial revenue from **interstate** commerce" (emphasis added). This is indeed a verbatim requirement of Connecticut's applicable long-arm statute.

Defendants then allege, with support from Kevlyn K. Zierk's affidavit (Doc. 32-2), that "Kevlyn's total Connecticut sales equal just 37 orders, totaling $1,451.40" (Doc. 32-1 at 7). The affidavit goes further, averring that those sales are less than about 1% of Kevlyn's total sales. But this answers the wrong question.

The question is not whether Defendants derive substantial revenue from **Connecticut** commerce; if that was the question, then the Connecticut General Assembly knew how to write "Connecticut" in the statute. Instead, the question is whether Defendants derive substantial revenue from **interstate** commerce. Defendants' affidavit and argument do not address this question. Plaintiff Hooray has made a prima facie showing that Defendants **do** derive substantial revenue from interstate commerce (*see* Doc. 1.1 at 7, Doc. 10-2 at 4-6); Defendant Zierk's affidavit merely confirms this (*see* Doc. 32-2 at ¶29-30). If Defendants' sales were predominantly Colorado sales, then this Court properly could, as the Connecticut Supreme Court wrote in *Ryan v. Cerullo*, "narrow the long-arm reach to preclude the exercise of jurisdiction over [a] nondomiciliar[y] who might cause direct, foreseeable injury within the [s]tate but whose business operations are of a **local** character[.]" 918 A.2d 867, 282 Conn. 109 (2007) (emphasis added). But Defendants neither aver nor argue that their sales are predominantly Colorado (local, not interstate) sales.

As Defendants' main argument against personal jurisdiction rests on their answering the wrong question, they fail to convincingly oppose the imposition of personal jurisdiction. Hooray's Complaint should not be dismissed on this basis.

Even if the Court thinks Defendants have raised doubt as to Defendants having substantial interstate revenue, the proper course would be to order jurisdictional discovery so that such doubt could be resolved.

Alan Harrison – SANDOLLAR Law – Milford, CT

Defendants next argue that personal jurisdiction would vitiate their Due Process rights by violating traditional notions of fair play and substantial justice, because they do not have "minimal [sic] contacts" with Connecticut. But their argument defies the law of this Court regarding internet sales.

This Court has looked to *Zippo* to determine whether a defendant has established minimum contacts by purposefully availing itself of the privilege of conducting business in the forum state via an Internet website. *See Paul Lis et al. v. Paul Delvecchio, Jr. et al.*, 3:11-cv-01057-AWT (D.Conn. August 13, 2012), ECF 101 at 6-7, *citing Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). Under *Zippo* guidance, this Court has held that "the situs of the injury" for alleged trademark infringement "is Connecticut" (*id* at 11) and that "operat[ing] an interactive website whereby Connecticut residents may purchase" items such as custom cookie stamps suffices to satisfy Due Process concerns (*id* at 12). Similarly, "advertising campaigns directed at Connecticut residents have been found sufficient to confer specific jurisdiction over non-resident defendants." *MacCallum v. New York Yankees P'ship*, 392 F. Supp. 2d 259, 266 (D. Conn. 2005).

Other courts in this District have distinguished between active and passive websites when assessing personal jurisdiction. *The Cousteau Soc., Inc. v. Cousteau*, 498 F. Supp. 3d 287, 303–04, 306 (D.Conn. 2020). "Passive websites that require a potential customer to initiate contact with the foreign corporation by telephone, mail, or mail, rather than allowing them to order directly over the Internet, cannot support

personal jurisdiction." *Kun Shan Ge Rui Te Tool Co. Ltd. v. Mayhew Steel Prods.*, Inc.,
821 F. Supp. 2d 498, 503 (D. Conn. 2010). On the other hand, active websites, "where
individuals can directly interact with a company over their Internet site, download,
transmit or exchange information, and enter into contracts with the company via
computer", support personal jurisdiction. *On-Line Techs. v. Perkin Elmer Corp.*, 141 F.
Supp. 2d 246, 265 (D. Conn. 2001). Defendant Kevlyn Creative's website has pricing
and links for customers to order "All Cookie Stamps" directly over the internet. *See* Doc.
10-2 at 6.

As Defendants' back-up argument against personal jurisdiction ignores this
Court's own law on the topic, Hooray's Complaint should not be dismissed on that basis,
either.

**Jurisdictional discovery is proper regarding whether Defendant Zierk is an alter ego of Kevlyn Creative**

Where, as here, there has been no discovery on jurisdictional issues and the
court is relying solely on the parties' pleadings and affidavits, the plaintiff need only
make a prima facie showing that the court possesses personal jurisdiction over the
defendant. *Carney v. Beracha*, 996 F. Supp. 2d 56, 60-61 (D.Conn. 2014), citing *Bank
Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 784 (2d Cir.1999). To
the extent that Defendant Zierk wants to challenge the prima facie showing of alter ego
status, jurisdictional discovery would be proper to develop the record. *See, e.g., Cleer
LLC v. Stranger*, 3:24-cv-01496-MPS (D.Conn. December 20, 2024), ECF No. 86
(directing jurisdictional discovery on controverted alter ego theory).

Defendants argue that the Complaint does not allege financial commingling under the law of the Southern District of New York or the Second Circuit. But "funds and assets are commingled" is only one of the eight factors set forth by the Colorado Supreme Court, which is the governing authority on whether a Colorado individual is the alter ego of a Colorado entity. Proper assessment of those eight factors requires additional information that was not available to Hooray when preparing the Complaint. Jurisdictional discovery would be proper to develop the record so that this Court may carefully decide this question under Colorado law.

**Venue is proper as to both Defendants; alternatively, jurisdictional discovery can help to resolve the question of venue**

As to proper venue, Defendants argue that venue is not proper because they are not subject to this Court's jurisdiction. That is the only argument they advance on this question. For the reasons set forth above, Hooray respectfully submits that Defendants are subject to this Court's jurisdiction and that venue therefore is proper; to the extent a question remains as to personal jurisdiction, jurisdictional discovery would be proper.

**Defendants concede that they falsely designated the origin of their custom cookie stamps, and merely argue against themselves that a mark they tried to register is not protectable**

Defendants do not argue that they did not copy Hooray's mark BAKE BAKE HOORAY. They argue merely that "[Hooray] has … not alleged that its mark is inherently distinctive" (Doc. 32-1 at 15). But "inherently" distinctive is not a requirement for trademark protection. Additionally, contrary to Defendants' argument, Hooray **did** plead that the mark BAKE BAKE HOORAY "was distinctive at the time of registration of the domain name." Compl. ¶ 37. Furthermore, **Defendants** already have asserted to a

Federal agency, under oath, that Hooray's mark is protectable and distinctive, and should be estopped from arguing otherwise here for the purpose of continuing their infringement on Hooray's mark. *See* Compl. ¶ 14 ("On August 1, 2024, Defendants filed U.S. Trademark Application 98678074 (the "Application", Exhibit D) for BAKE BAKE HOORAY[.]"; part of a trademark application is a sworn statement that "no other person has the right to use such mark", i.e., the mark is distinctive and protectable, *see* 15 U.S.C. §1051(b)(3)(D)).

Defendants' argument that Hooray has not alleged the mark to be protectable or inherently distinctive is the main argument they present against the counts for false designation of origin. Secondarily, they complain that Hooray pleaded false designation of origin based on both actual confusion and likelihood of confusion. Plaintiffs may plead in the alternative; if this Court eventually does not find actual confusion, the count based on likelihood of confusion is the back-up plan.

In any event, Defendants have made no convincing argument that Hooray failed to state a claim for false designation of origin. The Complaint should not be dismissed for this reason.

**Defendants committed cyberpiracy**

Regarding the cyberpiracy claim, Defendants argue that "[o]n a motion to dismiss, the Court should discount any conclusory allegations." *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 350 (S.D.N.Y. 2014). Defendants then characterize paragraphs 34-43 of the Complaint as conclusory allegations. But when reviewing a motion to dismiss, the

court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010). Hooray has pleaded that:

• The domain name bakebakehooray.com, is identical or confusingly similar to the Mark, which was distinctive at the time of registration of the domain name. Compl. ¶ 37.

• Kevlyn knew of the Mark "BAKE BAKE HOORAY", knew that Hooray had rights in the Mark, and knew that Kevlyn had no prior use of or rights in the Mark, at the time that Kevlyn registered bakebakehooray.com. Compl. ¶ 38.

• Kevlyn intended, by registration of bakebakehooray.com, to divert consumers from Hooray's cookie-selling website to Kevlyn's cookie-cutter-selling website. Compl. ¶ 40.

• Consumer complaints evidence that Kevlyn's diversion of consumers has actually harmed Hooray's goodwill. Compl. ¶ 41.

These are not "conclusory" allegations. They are allegations of specific facts, from which this Court reasonably could infer that Defendants committed cyberpiracy in violation of ACPA.

Accordingly, for this additional reason, the Complaint should not be dismissed.

**Defendants competed unfairly**

Defendants fail to raise a question whether they violated the Lanham Act; accordingly, reading the Complaint in the light most favorable to the non-moving plaintiff, a violation of CUTPA has been plausibly pleaded. But even if there were some question about trademark liability, Hooray has separately pleaded that "Kevlyn takes a

free ride on the popularity and name recognition of Hooray's BAKE BAKE HOORAY

cookies" (Compl. ¶ 44) — which is a discrete wrong from trademark infringement per se.

In responding to this pleading, Defendants correctly argue that Hooray's conclusion in

paragraph 47 is conclusory; they ignore the factual allegations of paragraph 44. Thus,

Defendants have not fairly responded to, and therefore have not even called into

question, the plausible allegations of the Complaint. But even if there was a question as

to Hooray's allegations, on a motion to dismiss that question should be resolved

Hooray's favor.

     For at least this additional reason, the Complaint should not be dismissed.


### Conclusion

     Hooray's Complaint establishes standing, subject matter and personal

jurisdiction, and venue. Hooray's Complaint pleads plausible claims for false designation

of origin, cyberpiracy, and unfair competition. Defendants' motion to dismiss evades

confronting the factual allegations in the Complaint, and cites New York law in

preference to less-favorable Connecticut or Colorado law, as if by ignoring the

allegations and applicable precedents they will go away. The motion to dismiss should

be denied.

Respectfully submitted,
s/Alan Harrison
Alan Harrison (ctd 29464)
alan@sandollar-law.net
203.212.9996
SANDOLLAR Law
6 West River Street #112
Milford, CT 06460


## Certificate of Service


On 2025-06-02 I served or caused to be served, upon Meghan Buckley and Gerard Saggese, attorneys for Defendants, the above paper, via ECF.

Respectfully submitted,
s/Alan Harrison
Alan Harrison ct29464
SANDOLLAR Law
6 West River Street #112
Milford, CT 06460
alan@sandollar-law.net
203.212.9996